G. Elliott Krusen and Grace F. Krusen, Husband and Wife v. Commissioner.
Krusen v. Commissioner
Docket No. 750.
United States Tax Court
1944 Tax Ct. Memo LEXIS 126; 3 T.C.M. (CCH) 919; T.C.M. (RIA) 44287; August 31, 1944
*126 Frank W. Harris, Jr., C.P.A., 915 Lewis Tower Bldg., Philadelphia, Pa., for the petitioners. Myron S. Winer, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves income tax deficiencies as follows: Year
Amount
1938
$365.52
1939
174.04
1940
159.43
The sole issue is whether the respondent properly included in the petitioners' gross income, for the years 1938, 1939 and 1940, sums paid to the wife of a deceased partner pursuant to the articles of copartnership. Findings of Fact The petitioner, G. Elliott Krusen (hereinafter referred to as "petitioner"), and his wife, Grace F. Krusen, are individuals residing at 1117 Delaware Avenue, Delanco, New Jersey. They filed joint income tax returns for the calendar years involved with the collector of internal revenue for the first collection district of New Jersey. On February 1, 1921, the petitioner entered into a written partnership agreement with his father, George C. Krusen, to engage in the business of sales representatives for manufacturers of goods and commodities under the name and style of "George C. Krusen & Son", for an indefinite period. They continued the *127 business as partners down to the death of George C. Krusen on September 6, 1937. The articles of copartnership, inter alia, contained the following provisions: "6. All gains, profits and increase that shall come or arise from or by reason of the said business shall be divided as follows, to wit: each partner shall be entitled to an annual drawing account, which shall be fixed and agreed upon at the beginning of each fiscal year by the said partners, according to their respective needs, and after the payment of the sums so determined, the net annual profits shall be equally divided between them. * * * * *
"11. In the event of the death of either of the partners during the course of the partnership, the share of him so dying shall vest in the surviving partner, charged, however, with the payment of the annual income from such share to such person or persons and in such proportions as the partner so dying may direct or appoint by Will or other writing." The aforementioned partnership contract was drawn by an attorney who was a son of George C. Krusen and a brother of petitioner and section 11, above set out, was inserted therein to carry out the direction made by *128 George C. Krusen that some provision be made whereby in the event of his death his widow would receive an income from the business without being under the necessity of going to the petitioner for funds for her support. After the death of George C. Krusen, the petitioner continued to conduct the business under the partnership name. In 1938 he took his brother into the partnership under an oral agreement. At the date of death of George C. Krusen, the books of the partnership showed the capital account of the respective partners as $2,615.86 each. At that date George C. Krusen was indebted to the partnership in the amount of $1,516.24. The last Will of George C. Krusen, dated September 10, 1924, contained, inter alia, the following provisions: "SECOND: In exercise of the power reserved to me in the Articles of Partnership of the firm of George C. Krusen & Son, dated the first day of February, A.D. 1921, I direct that the income from my share of the business be paid to my wife, Minnie M. Krusen during the term of her natural life. "THIRD: All the rest, residue and remainder of my property, real and personal, and wheresoever located I give, devise and bequeath to my *129 wife, Minnie M. Krusen, her heirs and assigns forever. "LASTLY: I nominate, constitute and appoint my said wife, Minnie M. Krusen as sole Executrix of this my last Will and Testament." Minnie M. Krusen, the deceased partner's widow, received from the profits of the business, conducted under the name of "George C. Krusen & Son", the following amounts: 1937, $2,273; 1938, $4,528; 1939, $3,914; and in 1940, $3,640. She rendered no services to that business. The said amounts were returned by her as taxable income. The respondent included those payments to Minnie M. Krusen in the gross income of the petitioners in the respective years in which they were paid, which is the basis of the contested deficiencies. In each of the years here involved the distribution of earnings of the business conducted by petitioner distributed to him was substantially in excess of the distributions of such income made in those years to his mother, Minnie M. Krusen. Opinion Petitioner contends that section 11 of the partnership contract was a purely business agreement under which his father had the right to dispose by will, to such person as he might select, such portions of the income of the business *130 in future years as he would have been entitled to receive himself had he lived and himself performed the services which produced it. Petitioner states that he has given it this effect and that he has always considered that his mother, by virtue of the contract and his father's will, was entitled to receive the income paid over to her and received it from the business, not from him. The respondent, on the other hand, insists that section 11 of the contract is to be construed as an agreement by the partners for the purchase by the surviving partner of the deceased partner's capital interest for a consideration measured by the future earnings of the business. On this premise it is urged that the business thereafter belonged to the survivor, its income was taxable to him, and such portions thereof as were paid over were merely his capital expenditures. Upon careful consideration of the provisions of the contract in the light of the surrounding circumstances, we can not agree with either of the theories advanced. The partnership business operated by petitioner and his father was that of selling agent for certain manufacturing concerns. Its customers were drug stores and the territory *131 covered several states. Petitioner and his father each devoted his entire time to the business and, since the death of the father, petitioner has taken over and performed the service formerly rendered by the latter. During the father's lifetime he did certain traveling for the firm, contacting the manufacturing concerns represented and certain of the firm's customers. Petitioner handled the office affairs and supervised the selling done by several traveling salesmen employed. The business is one in which capital is a small factor in the production of income. The capital account of each partner at the time of the death of the father was $2,615.86 and as of that date the father was indebted to the partnership in the sum of $1,516.24. There is no evidence of a value in the business represented by good will. There were no long term contracts with the manufacturers but merely selling arrangements running for a period of a year or less, many of them subject to cancellation upon notice. It is quite evident that in a business so constituted and operated substantially all of the earnings are produced by the individual efforts of the partners and upon the death of either one his "share" of *132 the partnership to which his estate would be entitled upon dissolution would be represented merely by the small capital investment less any indebtedness due the partnership from the decedent. In the case of petitioner's father this amounted to a net value of approximately $1,100 at the time of his death. Section 11 of the partnership agreement, although it purports to give each of the partners the right to dispose of his partnership interest to any beneficiary he might name, is shown to have been inserted at the direction of petitioner's father for the one purpose of providing for income to be received by his widow in such manner as to save her the necessity of appealing to the petitioner, as her son, for funds for her support. The effect given this provision by the petitioner has been merely to permit his mother to draw $75 per week from the business, as his father had done during his lifetime, and then at the end of the year if the withdrawals so made, together with his and his brother's withdrawals, did not equal the entire partnership earnings for the year, some portion of the balance remaining, determined in his discretion, was paid over to his mother. We can not see, however, *133 any legal obligation on petitioner, under section 11, to make such payment and we can not imagine the petitioner giving such construction to this provision had the recipient of the payments not been his mother but someone to whom he owed no moral responsibility for support. Let us suppose that his mother had died prior to his father's death and that the latter in his will, under authority of section 11 of the partnership contract, had disposed of his income from his "share" in the business to some outsider. Under such circumstances it is inconceivable that petitioner would have conceded an obligation to thereafter carry on the business and perform services and pay over approximately half of the income thus derived for a period of perhaps his entire remaining life, or that a court would have required such action. We think that upon the death of petitioner's father and the cessation of the services performed by him for the business that the income from his "share" would be only such part of the income of the business conducted by the remaining partner as could be ascribed to the continued use in the business of the deceased's capital interest. We think that petitioner's mother could, *134 upon his father's death, have legally required petitioner to pay over to her only the net $1,100 of capital interest owned by him as at the time of his death or, if it was retained in the business by petitioner, to pay to her such portion of the earnings of the business thereafter as could be ascribed to the use of this $1,100 capital interest. How much of the earnings of the business during the three years here in question can be ascribed to the $1,100 of capital is not disclosed, but it is manifestly only a small fractional part of the amount actually paid over by petitioner to his mother. In fact, during the year 1937, prior to the years here involved and subsequent to his father's death, payments made by him to her amounted to $2,273, or more than twice the total value of the interest in question. Respondent's theory that the contract should be construed as an agreement on the part of the petitioner to buy a capital interest in a small amount and pay as consideration practically half the earnings which he should derive through his own personal work and effort for an indeterminate number of years is, we think, unreasonable. A purchase and sale on such terms, we do not think, was *135 ever contemplated. The agreement in question was for the sole purpose of providing for the wife of the deceased partner and the mother of the petitioner and the payments made by the petitioner as due thereunder appear clearly to be ones which he could not have been required to make. The earnings, except for a very small and indeterminate fraction, are those from his individual efforts and are taxable to him. ; . Decision will be entered for the respondent.